**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TRANSPARENTBUSINESS, INC., d/b/a UNICOIN,**<br>Plaintiff,<br>v.<br>**UNIVERSAL NAVIGATION INC., d/b/a UNISWAP LABS,**<br>Defendant. | Civil Action No. 26-______________<br><br>**<u>COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TransparentBusiness, Inc., d/b/a Unicoin, by and through its undersigned counsel, for its Complaint against Defendant Universal Navigation Inc., d/b/a Uniswap Labs, alleges as follows:

## <u>NATURE OF THE ACTION</u>

1. This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Lanham Act, 15 U.S.C. § 1051 et seq.

2. Plaintiff has for several years used and continues to use the UNICOIN mark in connection with its cryptocurrency and related offerings.

3. Although Defendant has been aware of Unicoin for at least two years, it only recently has asserted that Plaintiff's use of UNICOIN infringes and dilutes Defendant's claimed UNISWAP, UNI, and UNICHAIN marks.

4. Uniswap has demanded that Plaintiff cease all use of UNICOIN and any other UNI-formative designation, surrender its domain names, provide a complete accounting of revenue, and pay Defendant's attorney fees, and has threatened litigation.

5. Defendant timed its recent infringement allegations to coincide with Unicoin's

imminent public offering.

6. Upon information and belief, Uniswap's allegations of trademark infringement and demands appear to be the product of animus rather than legitimate infringement concerns.

7. Unicoin seeks: (a) a declaration under 15 U.S.C. §§ 1114 and 1125(a) that its use of UNICOIN does not infringe Defendant's marks or constitute false designation of origin, false or misleading representation, or unfair competition; (b) a declaration under 15 U.S.C. § 1125(c) that Plaintiff's use does not dilute or tarnish Defendant's marks; (c) a declaration under 15 U.S.C. § 1125(d) that Plaintiff's use of its domain names does not violate the Anti-Cybersquatting Consumer Protection Act ("ACPA"); and (d) cancellation of U.S. Trademark Registration No. 7,307,721 for UNI (the "UNI Registration") under 15 U.S.C. §§ 1064 and 1119 because UNI is generic or, at most, merely descriptive without secondary meaning and fails to function as a mark.

**THE PARTIES**

8. Plaintiff TransparentBusiness, Inc., d/b/a Unicoin, is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York. Unicoin is the issuer of the UNICOIN cryptocurrency, the operator of the SafeBets ecosystem, and the successor to the Unicorn Hunters television program franchise. Plaintiff has continuously used the UNICOIN mark in United States commerce since at least 2021 and has used the "UNICORN" mark in connection with its business since at least 2018.

9. Upon information and belief, Defendant Universal Navigation Inc., d/b/a Uniswap Labs, is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act, and under 15 U.S.C. § 1121.

11. The Court has authority under 28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. § 1119 to declare the parties' rights concerning infringement, dilution, false designation of origin, unfair competition, cybersquatting, and the validity and registration of the UNI Registration.

12. An actual, substantial, and continuing justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201 and Article III of the United States Constitution.

13. The totality of the circumstances show a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant declaratory relief.

14. On June 3, 2026, Defendant's counsel sent a written demand accusing Plaintiff of trademark infringement, dilution, cybersquatting, and unfair competition. The letter demanded that Plaintiff immediately and permanently cease all use of UNICOIN and any other UNI-formative designation, transfer the domain names unicoin.com and unicoin.org, provide a complete accounting of revenue, and reimburse Defendant's attorney fees.

15. On July 17, 2026, Defendant's counsel rejected Plaintiff's response, reiterated all of its prior demands, and maintained that Plaintiff's use of UNICOIN and related designations infringed Defendant's marks. Defendant demanded a response by July 27, 2026 and stated that, if the matter could not be resolved to Defendant's satisfaction, Defendant would "consider all other legal remedies available to it."

16. On August 14, 2026, Defendant's counsel again reiterated the prior demands and stated that Defendant "will not continue to engage in a back-and-forth in this matter" and "will consider all available legal remedies available [*sic*] to it" if Plaintiff did not agree to those demands.

17. The cease-and-desist letters and explicit threats of litigation establish the actual controversy described above.

18. The escalating correspondence, the repeated demands and ultimatums, and the express threat to pursue all available legal remedies demonstrate a definite and concrete controversy of sufficient immediacy and reality to warrant declaratory relief.

19. The dispute is not hypothetical: Defendant has identified Plaintiff's existing marks, uses, and domain names and demanded that Plaintiff abandon them.

20. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in Manhattan and is therefore at home in this District and subject to the general personal jurisdiction of this Court.

21. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because Defendant has its principal place of business in and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### A. Plaintiff and the UNICOIN Mark

22. Plaintiff adopted the UNICOIN mark independently and in good faith by combining the "unicorn" concept—the foundation of the Unicorn Hunters brand—with the descriptive "coin." Plaintiff adopted the mark without reference to Defendant, its products, or any of Defendant's marks, and without any intent to trade on Defendant's goodwill.

23. Plaintiff has used the UNICORN mark since at least 2018.

24. For example, in April 2019, Plaintiff ran an advertisement in the Wall Street Journal referring to itself as a "Unicorn[]" and showing an image of a unicorn:



THE WALL STREET JOURNAL.

U.S. NEWS

# 'Ghost Ship' Fire Trial Begins in Oakland

*U.S. Cases Of Measles Accelerate*

Tracking Outbreaks

Disease Is Serious, But Preventable

Unicorns are rare and hard to spot, but there are rules which would help you spot a unicorn, decacorn or hectocorn – startups which would grow to the valuations exceeding one, ten and a hundred billion dollars respectively. Visit SpotUnicorns.com to learn how to spot these rare creatures.

SpotUnicorns.com website and an ROI calculator are provided by TransparentBusiness, a possible hectocorn-in-making. Designated by Citigroup as the "Top People Management Solution", the TransparentBusiness.com platform greatly increases the productivity of remote work, protects from overbilling, allows for easy monitoring and coordination of geographically distributed workforce and provides real-time information on the cost and status of all tasks and projects.

TransparentBusiness

25. Plaintiff's public June 5, 2020 Facebook post used a similar unicorn image and the mark UNICORN in connection with its marketing:




26. Plaintiff has used the UNICOIN mark continuously in United States commerce since at least 2021 in connection with its cryptocurrency, which has developed substantial goodwill and public recognition among a large base, including in relation to the Unicorn Hunters television show franchise. Plaintiff's use includes sales to thousands of investors and coinholders in more than 100 countries and an upcoming publicly reported offering.

27. Plaintiff's domain name unicoin.com was first registered in 2003—years before Uniswap existed.

28. Plaintiff's domain name unicoin.org was first registered in 2015—also years before Uniswap existed.

29. Plaintiff has spent millions of dollars advertising and promoting UNICOIN, including through Times Square billboards, large city-bus wraps, major conferences and events, and taxi advertising in major cities, including New York and Washington, D.C.

30. Plaintiff's chief executive officer and other executives have given countless talks and interviews promoting UNICOIN and the Unicorn Hunters business, including to major financial publications and media outlets such as The Wall Street Journal, Forbes, Fox, and MSN.

31. Through this sustained use, advertising, media exposure, and investor activity, Plaintiff has developed substantial goodwill and public recognition in the UNICOIN mark among a large base of coinholders and prospective purchasers across more than 100 countries.

32. Plaintiff positions UNICOIN as the network token of the SafeBets ecosystem and markets it under the tagline "The Smart Coin for Smart People." UNICOIN is presented to consumers as a single cryptocurrency asset, not as a decentralized exchange or blockchain-governance software platform.

33. Further, Plaintiff has withdrawn plans to issue a separate governance token under the UNICOIN mark. Plaintiff has also renamed its planned proprietary blockchain to a name that does not use any "UNI" prefix.

34. UNICOIN's branding has a sophisticated, high-end financial look and a gold color scheme. It is materially different from Defendant's whimsical unicorn imagery (shown further below), meaning each creates a different visual identity and commercial impression.

35. This image itself derives from the similarly angular unicorn images Plaintiff posted in the Wall Street Journal in 2019 and on Facebook in 2020:

 

**B. Defendant and Its Claimed Marks**

36. Defendant operates a decentralized cryptocurrency exchange under the UNISWAP mark and has done so since 2018. The UNISWAP protocol facilitates peer-to-peer trading of digital assets without a traditional intermediary and forms part of a broader decentralized-finance ecosystem.

37. Defendant launched a governance token under the ticker UNI in September 2020 and claims rights in the UNISWAP, UNI, and UNICHAIN marks.

38. Defendant owns U.S. Trademark Registration No. 7,307,721 for the standard-character mark UNI. The UNI Registration covers "minting services, namely, providing a website featuring technology that assists users to use blockchain technology for issuing cryptocurrency tokens for use by token holders to vote on and govern a blockchain protocol." It states a first use in commerce date of September 16, 2020. The mark was published on December 5, 2023. The registration date is February 20, 2024. The UNI Registration has been registered for fewer than five years and is not incontestable under 15 U.S.C. § 1065.

39. Notably, the date Uniswap first used the UNI mark, September 16, 2020, ***post-dates*** Plaintiff's first use of the UNICORN mark and unicorn images.

40. In recent correspondence, Defendant has referenced or alluded to the following Registered U.S. Trademarks as well:

a. No. 6,177,986 (standard-character mark UNISWAP for "Online trading [and exchange] for cryptocurrency, digital currency, virtual currency, blockchain enabled currency, and related assets");

b. No. 6,183,104 (standard-character mark UNISWAP for "Providing online, non-downloadable software for buying, selling, sending, receiving, exchanging, and transacting cryptocurrency, digital currency, virtual currency, blockchain enabled currency, and related assets; Providing online, non-downloadable software to enable transactions in cryptocurrency, digital currency, virtual currency, blockchain enabled currency, and related assets using blockchain, smart contracts, and related technologies");

c. No. 7,212,853 (textless drawing "of a unicorn for "Downloadable software for buying, selling, sending, receiving, exchanging, and transacting cryptocurrency, digital currency, virtual currency, blockchain enabled currency, and related assets; Downloadable software for transacting in cryptocurrency, digital currency, virtual currency, blockchain enabled currency, and related assets using blockchain, smart contracts, and related technologies"): ; and

d. No. 7,231,038 (standard-character mark UNISWAP for "Downloadable software for buying, selling, sending, receiving, exchanging, and transacting cryptocurrency, digital currency, virtual currency, blockchain enabled currency, and related assets; Downloadable software for transacting in cryptocurrency, digital currency, virtual currency, blockchain enabled currency, and related assets using blockchain, smart contracts, and related technologies").

41. In recent correspondence, Defendant has referenced or alluded to the following pending U.S. Trademark Applications:

a. No. 99,208,967 (standard-character mark UNISWAP for, *e.g.*, "Downloadable computer software for use as a cryptocurrency wallet; Downloadable computer software development tools" and "Providing on-line non-downloadable computer software for use as a cryptocurrency wallet");

b. No. 99,208,971 (design-only "stylized unicorn head" for, e.g., "Downloadable computer software for use as a cryptocurrency wallet; Downloadable computer software development tools.");

c. No. 98,548,436 (standard-character mark UNICHAIN for, *e.g.*, "Providing online non-downloadable software for developing, modifying, and contributing computing resources to blockchain technology");

d. No. 98,548,443, (standard-character mark UNICHAIN for, *e.g.*, "Computer application software for blockchain platforms");

42. Defendant's public materials, including a February 11, 2019 Uniswap blog post, assert that the UNISWAP name and unicorn branding derive from "unicorn." *See* https://blog.uniswap.org/uniswap-history (last accessed September 6, 2026).

43. But given the name of Defendant's company, it may derive from the word "Universal."

44. Regardless of whether the parties' marks both derive from the concept of the mythic unicorn, what they share is the etymological root "uni," meaning one—a common, generic, and descriptive term.

45. In any event, the complete marks, products, and marketplace presentations of Defendant are materially different from those of Unicoin.

**C. The "Uni" Element Is Common and Weak**

46. "UNI" is a common, dictionary-rooted prefix derived from the Latin *unus*, meaning "one," and is among the most common prefixes in the English language. It appears in ordinary words including unit, union, united, universe, universal, university, unique, uniform, unity, unicorn, unicycle, unify, unilateral, unison, and unisex.

47. More than 3,600 trademark registrations in the USPTO database contain "UNI" as a component, of which approximately 1,000 are currently live. Major brands across every sector of commerce use UNI-formative marks, including Unilever, UnitedHealth, United Airlines, UPS, Union Pacific, UNIQLO, Universal, Univision, UNISYS, UNIX, and UniCredit.

48. The cryptocurrency and digital-asset field is likewise crowded with UNI-formative designations. Multiple distinct cryptocurrency projects trade under the exact ticker "UNI," including at least three separate tokens listed under that ticker on CoinGecko. Other UNI-formative projects include Unibot (UNIBOT), Unifi Protocol DAO (UNFI), UniLend Finance (UFT), UNCX Network (UNCX), UniX Gaming (UNIX), Unibright (UBT), Unification (FUND), and UniLayer (LAYER).

49. There is, in addition, a separate "Unicoin" project associated with the Digital Currency Monetary Authority ("DCMA") that is unrelated to both Plaintiff and Defendant. That independent, well-known project further demonstrates that consumers encounter multiple unrelated uses of UNI and UNICOIN-formative names in the digital-asset marketplace.

50. Further, there is an exchange called "Unicoin" with the domain name unicoindcx.com that is not affiliated with Plaintiff.

51. Several UNI-formative cryptocurrency projects predate Defendant's September 2020 UNI token, including Universa (UTNP), whose initial coin offering occurred in 2017; UnikoinGold (UKG), which also dates to 2017; Unitus (UIS), dating from approximately 2016; Unify, dating from approximately 2016; and Unibright (UBT), which appeared in 2018.

52. The extensive third-party use described above weakens any claim to exclusive rights in UNI standing alone.

53. Consumers in the cryptocurrency field do not perceive UNI, without more, as identifying a single source.

**D. The Marks and Goods Differ**

54. UNICOIN on the one hand and UNISWAP, UNICHAIN, and UNI on the other differ materially in appearance, sound, connotation, and overall commercial impression when considered in their entireties.

55. "COIN" is a soft, drawn-out sound, commonly pronounced nearly as two syllables.

56. In contrast, "SWAP" and "CHAIN" are hard-consonant, monosyllabic sounds.

57. UNICOIN conveys the concept of a (digital) coin.

58. UNISWAP conveys exchange or trading.

59. UNICHAIN conveys blockchain infrastructure.

60. Digital coins, exchange or trading, and blockchain infrastructure each are fundamentally different commercial concepts.

61. Unicoin's offering is a single asset-backed cryptocurrency token marketed as "The Smart Coin for Smart People." It is not a decentralized exchange, not a governance token for Defendant's protocol, and not a blockchain platform.

62. Defendant's UNISWAP protocol is a complex decentralized exchange. It uses automated market makers and liquidity pools, supports trading across blockchain protocols, and is associated with governance voting, the UNI token, and the UNICHAIN blockchain. Defendant's own registrations describe software for exchanging cryptocurrency and for voting on and governing blockchain protocols, confirming the material distinction between those services and Plaintiff's asset-backed cryptocurrency.

63. The parties' products reach different audiences through different modes and are purchased or used under different circumstances.

64. Despite years of prominent and aggressive marketing by both parties—including Plaintiff's extensive advertising, media appearances, and public outreach, and its sales to thousands of investors and coinholders in more than 100 countries—no one has asked Plaintiff or its personnel whether UNICOIN is connected to Uniswap, nor has anyone other than Uniswap suggested any semblance of connection between the two.

**E. Defendant's Demands and Threats**

65. On June 3, 2026, Defendant's counsel sent a demand letter accusing Plaintiff of infringement, dilution, cybersquatting, and unfair competition based on Plaintiff's use of the UNICOIN and UNICOINX marks, trade names, and unicorn logos. The letter asserted Defendant's trademark registrations and demanded that Plaintiff immediately and permanently cease all use of UNICOIN and any UNI-formative marks in connection with cryptocurrency, blockchain, decentralized finance, or a decentralized ecosystem; transfer unicoin.com and unicoin.org; refrain from future use or registration of the marks; provide a complete accounting of revenues and profits; and reimburse Defendant's attorney fees.

66. On June 23, 2026, Plaintiff's counsel responded by respectfully declining all demands. The response explained that Plaintiff adopted UNICOIN independently and in good

faith, had used the mark continuously since 2021, and had developed a distinct brand and market presence. It further explained that the parties' marks create starkly different commercial impressions, that the UNI prefix is weak and widely used, and that there was no likelihood of confusion or evidence of actual consumer confusion.

67. On July 17, 2026, Defendant's counsel rejected Plaintiff's arguments, reiterated all prior demands, and asserted that UNICOIN was likely to cause confusion with UNISWAP, UNI, and UNICHAIN. Defendant again demanded cessation of use, transfer of the domain names, an accounting, and reimbursement of fees, and stated that it would "consider all other legal remedies available to it" if the matter could not be resolved to Defendant's satisfaction.

68. On July 28, 2026, Plaintiff's counsel responded again, reiterating that there was no likelihood of consumer confusion. The response emphasized the starkly different sounds, meanings, products, services, channels, audiences, and branding of UNICOIN and Defendant's marks, and explained that Plaintiff had withdrawn its plans for a governance token and renamed its planned blockchain.

69. On August 14, 2026, Defendant's counsel sent a letter again reiterating the June 3 and July 17 demands and demanding that Plaintiff remove references to the UNICOIN token. The letter stated that Defendant "will not continue to engage in a back-and-forth in this matter" and that it "will consider all available legal remedies available to it if Unicoin does not agree to these demands."

70. The escalating nature and finality of Defendant's August 14 letter, combined with its explicit threat to pursue "all available legal remedies," confirms that the parties have adverse legal interests and that the controversy is definite, concrete, immediate, and real. Defendant has not provided Plaintiff with an unconditional, irrevocable covenant not to sue or otherwise

disclaimed its asserted claims.

71. On May 12, 2024, Defendant's chief executive officer, Hayden Adams, publicly posted that Plaintiff should be subject to the scrutiny of the Securities and Exchange Commission. On information and belief, that public intervention evidences personal hostility toward Plaintiff and a motive beyond measured good-faith trademark protection, and further contributes to Plaintiff's reasonable apprehension that Defendant intends to pursue litigation or other coercive action.

72. The timing of Uniswap's demands suggests improper motive and further establishes that Plaintiff's apprehension that Defendant intends to pursue litigation is reasonable.

73. Uniswap's expressed hostility toward Unicoin and the timing of its cease-and-desist letters to coincide with Unicoin's upcoming public offering make this an exceptional case.

74. Although Mr. Adams's comments establish that Uniswap has been aware of Unicoin's business for more than two years, the June 3, 2026 letter was the first time it has suggested that Unicoin's name, marks, and domain names infringe on its own registered marks.

75. Uniswap's very first letter alluded to Unicoin's "Initial Coin Offering scheduled for September 2026."

76. That Uniswap knew of Unicoin's mark and business for two years yet chose to assert infringement only on the eve of Unicoin's offering suggests that Uniswap's claim of infringement is not motivated by legitimate concerns.

**F. Defendant's UNI Registration Is Invalid**

77. The UNI Registration is subject to cancellation because UNI is generic, or at most merely descriptive, for software relating to cryptocurrency tokens and blockchain governance, and because the term fails to function as a mark identifying a single source.

78. UNI is a common English language prefix derived from Latin meaning "one."

79. The prefix UNI thus conveys uniqueness or singularity. It is merely descriptive.

80. The prefix UNI has no intrinsic connection to Defendant or its products. It does not identify or distinguish Defendant's goods or services from those offered by others.

81. As alleged above, UNI is used pervasively in commerce and specifically in cryptocurrency and digital assets. Multiple unrelated cryptocurrencies trade under the exact ticker UNI, numerous UNI-formative projects coexist in the field, and several such projects predate Defendant's UNI token. Consumers therefore do not perceive UNI standing alone as identifying a single source.

82. Although Uniswap has registered "UNI," creating a rebuttable presumption as to validity, that presumption is overcome by the evidence that the claim is generic or descriptive without secondary meaning.

83. That some of Defendant's marks are registered thus does not convert the common, descriptive, or generic term into an exclusive source identifier.

84. Because the UNI Registration has been registered for fewer than five years, it is not incontestable under 15 U.S.C. § 1065. It remains subject under 15 U.S.C. § 1064(1) to grounds that would have barred registration in the first instance, including mere descriptiveness without acquired distinctiveness and failure to function as a mark.

85. In addition, the generic nature of the UNI Registration means it can be canceled at any time under § 1064(3).

86. The relevant public encounters UNI as a common prefix, ticker, or designation used by multiple unrelated parties, and not as a single-source identifier.

87. Plaintiff's use of UNICOIN is obstructed by Defendant's assertion of the UNI Registration and Defendant's demand that Plaintiff abandon its mark and transfer its domain

names. Plaintiff is thereby damaged by the continued registration and has standing to seek cancellation under 15 U.S.C. §§ 1064 and 1119 in this action regarding the UNI Registration.

88. Cancellation will resolve a central issue in the parties' controversy and will remove the false sheen of exclusivity that Defendant invokes to obstruct Unicoin's continued use of its own independently adopted mark.

**COUNT I**
**Declaratory Judgment of Non-Infringement**
**(15 U.S.C. §§ 1114, 1125(a); 28 U.S.C. § 2201)**

89. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

90. As the party claiming trademark infringement, Uniswap bears the burden of establishing a valid, protectable mark and a likelihood of confusion.

91. For the reasons set forth above, Uniswap cannot establish that its UNI mark is valid and protectable.

92. There also is no likelihood of confusion.

93. The asserted UNI element in each of Uniswap's word marks is weak.

94. "Uni" is a common English prefix derived from Latin unus.

95. The digital-asset field contains multiple unrelated UNI and UNI-formative projects.

96. The crowded field limits the scope of any protection in UNI standing alone.

97. The complete marks differ in appearance, sound, meaning, and overall commercial impression: UNICOIN conveys a single coin, UNISWAP conveys exchange or trading, and UNICHAIN conveys blockchain infrastructure.

98. Likewise, Unicoin's materially different design cannot be mistaken for Uniswap's unicorn design:

| Unicoin: | Uniswap: |
|---|---|

99. Any similarity between the two designs is due entirely to the common lore surrounding unicorns: a horse-like creature with a single horn. Uniswap's unicorn has flowing locks and soft curves that convey whimsy, whereas Unicoin's unicorn is composed of sharp, precise lines that give the impression that it means business. No reasonable person presented with these images would say they are similar beyond the fact that each depicts the mythical (and omnipresent) unicorn.

100. The products are not proximate: Plaintiff offers a single cryptocurrency asset, while Defendant operates a decentralized exchange and associated blockchain and governance ecosystem, reaching different audiences through different channels.

101. There is no evidence of actual consumer confusion despite years of prominent use and marketing of UNICOIN.

102. Plaintiff adopted UNICOIN independently and in good faith from its Unicorn Hunters television show and the myth of the unicorn and the descriptive "coin," without intent to trade on Defendant's goodwill.

103. The quality factor is, at most, neutral, and the relevant purchasers of cryptocurrency and related technology generally are knowledgeable and discerning and exercise care.

104. As the UNI mark is not valid, Plaintiff is entitled to a declaration that its use of the

UNICOIN mark does not infringe any valid and enforceable trademark right of Defendant under 15 U.S.C. §§ 1114 or 1125(a).

105. As there is no probability of confusion, Plaintiff is entitled to a declaration that its use of the UNICOIN mark and its unicorn logo does not infringe any valid and enforceable trademark right of Defendant under 15 U.S.C. §§ 1114 or 1125(a).

**COUNT II**
**Declaratory Judgment of No Dilution**
**(15 U.S.C. § 1125(c); 28 U.S.C. § 2201)**

106. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

107. To establish federal dilution under 15 U.S.C. § 1125(c), Defendant must prove that its claimed mark is famous and distinctive, that Plaintiff used a mark in commerce after Defendant's mark became famous, and that Plaintiff's use is likely to cause dilution by blurring or tarnishment.

108. A mark is famous only if it is widely recognized by the general consuming public of the United States as a designation of source.

109. Recognition within a niche cryptocurrency or decentralized-finance market—which is the most Uniswap can claim for itself—does not meet that high standard.

110. Blurring requires consideration of degree of similarity, the inherent or acquired distinctiveness of the famous mark, substantially exclusive use, degree of recognition, intent to create an association, and actual association.

111. The complete marks are not sufficiently similar, Defendant's asserted UNI element is weakened by extensive third-party use, Defendant has not shown substantially exclusive use or actual association, and Plaintiff did not intend to create an association with Defendant's marks.

112. Plaintiff is entitled to a declaration that its use of UNICOIN does not dilute any mark of Defendant under 15 U.S.C. § 1125(c).

**<u>COUNT III</u>**
**Cancellation of U.S. Registration No. 7,307,721**
**(15 U.S.C. §§ 1064, 1119)**

113. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

114. Under 15 U.S.C. § 1064(3), a petition for cancellation may be filed at any time if a registered mark is or has become generic.

115. Under 15 U.S.C. § 1119, a court in any action involving a registered mark may determine the right to registration and order the cancellation of a registration, in whole or in part.

116. Registration on the Principal Register is but prima facie evidence of validity, registration, ownership, and the registrant's exclusive right to use the mark in connection with the specified goods or services under 15 U.S.C. § 1115(a).

117. The UNI Registration also is not incontestable.

118. Unicoin can rebut the presumption of validity by proving genericness or descriptiveness without secondary meaning, and Defendant cannot rely on registration to transform UNI into an exclusive source identifier.

119. The UNI Registration is invalid and subject to cancellation because UNI is generic, or at most merely descriptive without acquired distinctiveness, for the recited software and related blockchain-governance services.

120. UNI also fails to function as a mark because the relevant public encounters UNI as a common prefix, ticker, and designation used by multiple unrelated parties rather than as a single-source identifier.

121. Plaintiff, whose use of UNICOIN is threatened and obstructed by Defendant's assertion of the UNI Registration, has been and continues to be damaged by the continued registration.

122. Unicoin is entitled to an order cancelling U.S. Registration No. 7,307,721 under 15

U.S.C. §§ 1064 and 1119.

**COUNT IV**
**Declaratory Judgment of No Cybersquatting**
**(15 U.S.C. § 1125(d); 28 U.S.C. § 2201)**

123. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

124. Under the ACPA, 15 U.S.C. § 1125(d)(1)(A), Defendant would have to prove that Plaintiff registered, trafficked in, or used a domain name with a bad-faith intent to profit from Defendant's mark, and that the domain name is identical or confusingly similar to a mark that was distinctive at the time of registration (or, for a famous mark, identical, confusingly similar, or dilutive of a mark that was famous at the time of registration).

125. Unicoin did not select or use its domain names to target, copy, or profit from any mark of Defendant.

126. Plaintiff registered and uses unicoin.com and unicoin.org in connection with its own bona fide business.

127. Unicoin's domain names derive from Plaintiff's independently adopted UNICOIN mark and business identity.

128. Unicoin's domain names do not derive from or relate to any mark of Defendant.

129. Unicoin's domain names were not registered or used to divert consumers, ransom the domains, or profit from Defendant's goodwill.

130. Plaintiff has not offered the domains for sale, provided misleading registration information, or engaged in a pattern of registering domain names corresponding to others' marks.

131. Plaintiff reasonably believed that its registration and use of the domains were lawful.

132. An actual controversy exists because Defendant has demanded transfer of the domain names and threatened legal remedies. Plaintiff is entitled to a declaration that its

registration and use of unicoin.com and unicoin.org do not violate 15 U.S.C. § 1125(d).

**COUNT V**
**Declaratory Judgment of No Unfair Competition**
**(15 U.S.C. § 1125(a); 28 U.S.C. § 2201)**

133. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

134. Plaintiff's use of the UNICOIN mark does not constitute a false designation of origin, false or misleading representation, false or misleading description of fact, or unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff has not used any word, term, name, symbol, device, or trade dress in a manner likely to cause confusion as to the origin, sponsorship, affiliation, or approval of Plaintiff's goods or services.

135. The Section 43(a) analysis confirms the absence of unfair competition: the parties' complete marks, products, services, channels, audiences, and trade dress are materially different; the UNI element is weak and crowded; Plaintiff adopted UNICOIN independently and in good faith; and Defendant has identified no actual consumer confusion. These facts defeat any claim based on an unregistered mark, false designation, or trade dress under the Polaroid factors.

136. Plaintiff is entitled to a declaration that its use of the UNICOIN mark does not constitute false designation of origin, false or misleading representation, or unfair competition under 15 U.S.C. § 1125(a).

**COUNT VI**
**Declaratory Judgment of Laches**
**(28 U.S.C. § 2201)**

137. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

138. Uniswap has known of Unicoin's name and business for more than two years.

139. Its failure to raise the issue for two years while Unicoin carried on its business constitutes unreasonable delay.

140. Because Unicoin is on the brink of a public offering, it has been and will be

adversely affected by Uniswap's allegations of infringement, which cast uncertainty upon the UNICOIN mark it has publicized heavily for more than two years.

141. Unicoin and its investors therefore have been and will be prejudiced by Defendant's unreasonable delay.

142. The doctrine of laches bars Uniswap's allegations of infringement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a. Declaring that Plaintiff's use of the UNICOIN mark does not infringe any valid and enforceable trademark right of Defendant under the Lanham Act;

b. Declaring that Plaintiff's use of the UNICOIN mark does not constitute false designation of origin, false or misleading representation, or unfair competition under 15 U.S.C. § 1125(a);

c. Declaring that Plaintiff's use of the UNICOIN mark does not dilute any mark of Defendant under 15 U.S.C. § 1125(c);

d. Declaring that Plaintiff's registration and use of the domain names unicoin.com and unicoin.org do not constitute cybersquatting or violate 15 U.S.C. § 1125(d);

e. Declaring that Defendant's allegations of infringement are barred by the doctrine of laches;

f. Ordering the cancellation of U.S. Registration No. 7,307,721 pursuant to 15 U.S.C. §§ 1064 and 1119;

g. Finding this to be an exceptional case and awarding Plaintiff its reasonable attorney fees and costs under 15 U.S.C. § 1117; and

h. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 8, 2026

By: */s/ Netra Sreeprakash*

Netra Sreeprakash*
McDowell Hetherington LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
netra.sreeprakash@mhllp.com

*Attorneys for Plaintiff TransparentBusiness Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record through the electronic case filing system on September 8, 2026.

*/s/ Netra Sreeprakash*
Netra Sreeprakash